No. 46,091

STATE OF KANSAS, *Appellee*, v. THOMAS JOSEPH UNDORF, *Appellant*.

(499 P. 2d 1105)

Opinion filed July 19, 1972.

*Russell Shultz,* of Wichita, argued the cause, and *Leonard F. Watkins, Jr.,* of El Dorado, was with him on the brief for the appellant.

*R. K. Hollingsworth,* chief deputy county attorney, argued the cause, and *Vern Miller,* attorney general, and *Keith Sanborn,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This is a criminal appeal in which the primary issue is whether the appellant's rented automobile was subjected to an unreasonable search.

On the night of May 4, 1969, the Sedgwick county sheriff and one of his deputies, Syd Werbin, were on the prowl in the outskirts of Wichita at about 11:00 p. m. They were looking for a burglary suspect, and their quest took them to the vicinity of the "Waterhole Club" on 37th Street. As they approached in their patrol car they observed a 1969 Mustang pull out of the driveway with a spinning of wheels. It swerved over the center line before settling on a westward course at a high rate of speed; the officers fell in behind. At the intersection of Arkansas Avenue the Mustang disregarded the stop sign, and turned left without signaling; it thereafter crossed and recrossed the center line again. At this point the officers turned on their red light and siren and the Mustang pulled over to the curb. The patrol car pulled in behind it.

The officers approached the Mustang, one on each side. In the hand of the appellant's female passenger they observed a glass which, on closer examination, appeared to contain liquor. Appellant was asked to step out from under the wheel and the sheriff concluded from his observation that he was intoxicated. An open bottle of liquor was lying on the console between the seats.

At this point the sheriff determined that appellant should be placed under arrest, and told Werbin to take care of the formalities. This he did, while standing at the front fender of the patrol car, by advising appellant that he was under arrest for driving under the influence and transporting an open bottle, and by reading him the "Miranda" warning. When asked whether he wished to talk to the officers appellant made no response.

It was determined that the Mustang should be impounded, and a wrecker was summoned for the purpose of towing it in; a license plate check revealed that the car belonged to a local car leasing firm. Appellant and his companion were placed in the back of the patrol car, and the sheriff returned to the Mustang to explore a suitcase he had observed on the back seat. As the sheriff put it:

"Well, I went back to look at the car because when I first had looked inside the car I noticed a suitcase laying on the back seat. I had decided then that I was going to tow the car in; and so I just went and opened the suitcase to see if there was anything in it I should take out."

Asked on cross-examination why he opened the suitcase he replied:

"First to see if there was anything of value in the suitcase because I knew I was going to relinquish control of it to the wrecker company; and second, to see if there was any more whiskey in the car which could be used as evidence in the open bottle case."

Opening the suitcase revealed sheets and pillowcases and, most significant to the sheriff, an assortment of liquor. The selection included three varieties of Scotch, two of tequila, some Mexican gin, three kinds of wine and several bottles of very good bourbon; some of the bottles were only partly full. The sheriff promptly summoned deputy Werbin to bring the appellant up to the Mustang. When he arrived, again in the sheriff's words:

"I said to him is this your whiskey. He said yes. I said where did you get it. He said I bought it. I said well, where did you buy it. He said I bought it up the street. I said well, who did you buy it from. He said from a guy. I said well, who was he. He said I never seen him before. I said you just bought open whiskey, expensive whiskey, and never seen the guy before. He said that's right. I said when did you buy it. He said tonight. So I said— I told him that's ridiculous, I can't believe that. He shrugged his shoulders and said that's it."

Suspicions now thoroughly aroused, the sheriff took the keys from the ignition and went to the back of the Mustang. There, once more in his words:

"A. Well, I opened the trunk. There were several things in the trunk. Suddenly Undorf says that's not my suitcase. I looked at him and said which one isn't yours. He pointed and said that little green one. He said I never seen that before. I said what do you mean you never seen that before. He said this is a rented car that's not my suitcase. I don't know how that got there. I said is the rest of the stuff yours. He stated yes. I said but that's not yours. And he said yes. So I just opened the suitcase.
"Q. When you opened the suitcase, what did you observe then?
"A. It was full of narcotics and drugs."

The sheriff thereupon told both appellant and his companion that they were under arrest, and took them and the suitcase full of drugs to the county jail. En route it occurred to him to confiscate the lady's purse, which proved to contain a loaded .38 calibre pistol. Werbin was left with the Mustang to await the wrecker, which in due course brought it to the county jail where its contents were removed.

As result of this episode appellant was charged with a number of offenses which were presented to a jury in a consolidated trial of four separate cases. The liquor and bedding, as well as a coin

collection, camera and a number of small household items found in the car proved to have been stolen from a Wichita residence in a burglary which had occurred a day or two before the arrest. Appellant was acquitted of the burglary but convicted of feloniously receiving these items knowing them to have been stolen.

The drugs had been stolen from a drugstore in Lincoln, Kansas, about ten days before. Appellant was convicted of feloniously receiving this stolen merchandise, of feloniously possessing opium derivatives, and of the unlawful possession of non-narcotic prescription drugs, a misdemeanor.

He was also convicted of four traffic offenses: open bottle, speeding, illegal left turn, and driving on the wrong side of the road. He was not charged with driving under the influence because his blood test proved too low.

The net result was a sentence of one to five years in the penitentiary for receiving the stolen whiskey, etc.; concurrent terms of one to five years and one to seven years for possession of the narcotic drugs and for receiving the merchandise stolen from the drug store, to be served consecutively to the first "receiving" sentence; one year in the county jail for possession of the non-narcotic drugs; and varying jail terms on the traffic counts. All the jail sentences were ordered to be served concurrently with the felony sentences. This appeal is from all convictions except for the traffic offenses.

Appellant made a pre-trial motion to supress all the evidence taken from the Mustang and objected to its introduction at trial. His motion and his objections were overruled. His position is that the evidence was the product of an unreasonable search of the Mustang, made without a warrant and not falling within any of the recognized exceptions to the warrant requirement of the Fourth Amendment.

As its first line of defense the state urges that the search of the suitcase was incident to the lawful arrest of appellant. He, in response, does not contend that the arrest was unlawful, but urges that the justification for an incidental search is not present when the arrest is for a "minor traffic offense."

The classic justifications for searching as an incident to an arrest are to protect the arresting officer from concealed weapons, to prevent the escape of the suspect, and to prevent the loss or destruction of evidence. See, *e. g., Preston v. United States,* 376 U. S. 364,

11 L. Ed. 2d 777, 84 S. Ct. 881, and cases cited therein. This long-standing rule has recently been codified in this state in K. S. A. 1971 Supp. 22-2501.

Appellant's argument that there are no "fruits, instrumentalities, or evidence" of a minor traffic offense clearly overlooks the open bottle charge of which he was convicted, as well as the driving while intoxicated charge for which he was arrested but not tried. It is true the officers had already seized one open bottle, but we hardly think this precluded their looking for more.

There was, moreover, a second stated reason for searching the suitcase, and that was to determine whether it contained articles of value requiring safekeeping. This was closely akin to the "station-house inventory" search which has lately received considerable attention in the federal circuit courts, although so far as we are able to ascertain has as yet to be treated by the high court itself.

Typical of this line of cases is *United States v. Lipscomb*, 435 F. 2d 795 (5th Cir. 1970). There the defendant and his girl friend had been arrested in a hotel room on probable cause to believe that they had fraudulently used stolen credit cards. They and their baggage were taken to jail, where the baggage was routinely searched. The search uncovered an automobile key which led to a Chrysler parked at the hotel parking lot; the car was likewise taken into custody and searched. This search led to the ascertainment of its identification number, the fact that it was stolen, and eventually to the defendant's conviction for transporting it in interstate commerce. The Fifth Circuit upheld the search of both baggage and car. As to the baggage search, the court said (p. 800):

". . . It can not be denied that to prevent escape, self-injury, or harm to others, the police have a legitimate interest in separating the accused from the property found in his possession. An inventory is then necessary both to preserve the property of the accused while he is in jail and to forestall the possibility that the accused may later claim that some item has not been returned to him."

As to the later search of the car it said (p. 801):

". . . Ordinarily no search warrant would be required for such a procedure, for the reason that it is both reasonable and desirable that personal effects contained within impounded automobiles be protected for the benefit of the owners."

Similar searches of the baggage of arrested defendants made for safekeeping purposes were upheld in *United States v. Robbins*, 424

F. 2d 57 (6th Cir. 1970) and in *United States v. Blackburn,* 389 F. 2d 93 (6th Cir. 1968).

In the case at bar the suitcase was not being searched as a part of a routine inventory, but it was being searched for the similar purpose of determining the need for safekeeping precautions. Arrangements had already been made for a private firm to take the car into custody, and the sheriff was justified, in our view, in determining what was in the suitcase. Of course, he could have removed the suitcase, taken it to the county jail with him, and inventoried it there. Had he done so he would clearly have fallen within the "stationhouse inventory" doctrine—although the argument then would no doubt have been that the search was not contemporaneous with the arrest. We see no distinction of substance between an on-the-scene preliminary search and a thorough inventory made at the jailhouse. Cf., *Chambers v. Maroney,* 399 U. S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975; *United States v. Robbins,* supra.

Thus, either as a search incidental to a lawful arrest or as a reasonable safekeeping precaution we hold that the sheriff did not act unlawfully in opening the suitcase.

Once it was open and the array of liquor exposed the matter took on a different complexion. The sheriff was naturally curious to know where such an assortment—some boxed, some partially consumed—might have come from. Appellant's account of having just bought it that Sunday evening from a stranger was inherently incredible. We believe that after hearing this story the sheriff had probable cause to believe it was stolen. The facts and circumstances known to him at that point were sufficient to warrant a prudent man in believing that a felony had been or was being committed. Once his suspicions were elevated to that level he was justified in searching the entire car, including the trunk. See, *State v. Frizzell,* 207 Kan. 393, 485 P. 2d 160, Syl. ¶¶ 3 and 4, *State v. Blood,* 190 Kan. 812, 378 P. 2d 548.

Appellant points out that when the sheriff searched the trunk he had no information that any particular theft had occurred from any particular person. But if the car contained stolen property an offense was being committed in the presence of the officers and they were not required to have in their possession all the evidence necessary to convict.

"On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably

arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid." (*Carroll v. United States*, 267 U. S. 132, 149, 69 L. Ed. 543, 45 S. Ct. 280, 39 A. L. R. 790.)

And cf., *Brinegar v. United States*, 338 U. S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302; *State v. Blood*, supra.

Confusion has arisen between the right to search incident to an arrest and the right to search an automobile on probable cause. *Preston v. United States*, supra, perhaps contributed to this confusion by its holding that a search of the defendant's automobile made at the police station some time after the arrest was invalid because it was "simply not incident to the arrest." (376 U. S. 364, at 367.) However, in *Chambers v. Maroney*, supra, the court made clear that the same knowledge providing probable cause for an arrest may also furnish probable cause for a search. Referring to *Carroll v. United States*, supra, the Court said (399 U. S. at 49):

"The Court also noted that the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest:

" 'The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.' 267 U. S., at 158-159."

The upshot is that if there is probable cause to search a car such search need not be "incidental to" or "contemporaneous with" an arrest, but may be made wholly independently of any arrest at all. Compare *Wood v. Crouse*, 417 F. 2d 394 (10th Cir. 1969) with *Wood v. Crouse*, 436 F. 2d 1077 (10th Cir. 1971), the same case on remand after *Chambers*. Thus if, as we hold, appellant's unsatisfactory explanation of his possession of the liquor in the suitcase gave rise to probable cause to believe it was stolen, the subsequent search of the trunk was not unreasonable.

We have examined the other points raised by the appellant and find no reversible error.

The judgment is affirmed.

APPROVED BY THE COURT.

FROMME, J., dissenting: Never before has this court gone so far in upholding what I consider to be an impermissible general exploratory search of an automobile stopped for a routine traffic violation. General exploratory searches are not permissible even

when made under the *prima facie* authority of a search warrant. See *Go-Bart Co. v. United States*, 282 U. S. 344, 75 L. Ed. 374, 51 S. Ct. 153. In *Stanford v. Texas*, 379 U. S. 476, 13 L. Ed. 2d 431, 85 S. Ct. 506, it was held that a search warrant must have specificity to be constitutionally permissible. A general exploratory search cannot be justified by what it produces nor an arrest be justified by the fruit of an illegal search. (*Byars v. United States*, 273 U. S. 28, 71 L. Ed. 520, 47 S. Ct. 248.)

The majority of this court determine that the search of the locked trunk of this motor vehicle, which was stopped for traffic violations, was reasonable since it was based upon probable cause to believe that some felony had been committed. Yet the testimony of Vern Miller, the arresting officer, belies that determination. At the preliminary hearing, when the facts and circumstances surrounding the arrest were fresh in his mind, he testified in response to questions regarding probable cause on the stolen property and narcotic charges as follows:

"A. [Miller] Yes, but if you want me to answer the question, had I a suspicion, I couldn't have obtained a search warrant on a suspician.

"Q. [Defense counsel] The fact is you didn't have any suspicion except the open bottle.

"A. [Miller] I didn't even have suspicion when I looked in the suitcase and saw the open bottles."

It takes more than rumor, suspicion or even strong reason to suspect to constitute probable cause for search and seizure. (*Harris v. United States*, 331 U. S. 145, 91 L. Ed. 1399, 67 S. Ct. 1098.) A search which is reasonable at inception may, as in the present case, violate the Fourth Amendment by its intensity and scope. (*Terry v. Ohio*, 392 U. S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) An arrest for transporting an open bottle, as in *United States v. Croft*, 429 F. 2d 884 (10th Cir. 1970), may be sufficient to premise a limited search at the scene of the arrest but will not justify a general exploratory search for evidence of unrelated crimes.

Certain facts surrounding the search and seizure in this case should be kept in mind. The accused was driving a leased or rented automobile. The narcotics seized from the locked trunk were the only evidence tying defendant to the narcotic violations. (Possession of narcotics.) The couple occupying the motor vehicle appeared no different to the officers than any other slightly inebriated couple on their way to or from some drinking party. The discovery by officers of an open bottle in a car, accessible to

the driver, is not an uncommon occurrence. Such proscribed behavior constitutes a misdemeanor. (K. S. A. 41-804.) No extraordinary quantity of mixed liquors were being transported and, except for the one bottle, the assortment of liquor was confined to a suitcase. The assortment of liquor might well indicate that the occupants of the car were furnishing or had furnished liquor for a party. What is there about this suitcase of liquor to put the officer on reasonable notice that some felony had been committed? It is perfectly legal in Kansas to transport open containers of alcohol in the locked trunk of a car where it is not accessible to the driver and passengers. What right did the officers have to extend their search to the locked trunk of the car?

The arresting officers in this case had no advance information of a crime and no description of a getaway car as in *State v. Wood*, 190 Kan. 778, 378 P. 2d 536, and in *State v. Blood*, 190 Kan. 812, 378 P. 2d 548. In the case of *State v. Robinson*, 203 Kan. 304, 454 P. 2d 527, the arresting officer had information from a reliable informer as to the description of the car and the nature of the contraband being transported. In *State v. Frizzell*, 207 Kan. 393, 485 P. 2d 160, the officers saw a pile of unwrapped merchandise lying on the back seat of the car. Attached to certain of these articles of clothing were department store price tags in plain view. The officer observed furtive attempts by the occupants to conceal the merchandise and price tags. In *Chambers v. Maroney*, 399 U. S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975, the officers were advised in advance of the robbery of a filling station. They had a description of the blue compact station wagon seen leaving the scene of the crime at high speed. They were advised that one of the occupants was wearing a green sweater.

In *United States v. Croft*, supra, the defendant was stopped for a traffic violation. An open bottle was seen in the car. It was held a limited search of the inside of the car, including the glove compartment, was permissible. However, a further exploratory search, using a key found in the glove compartment, was permitted only on the basis of a search warrant obtained by the officers.

The reasoning by which the majority finds probable cause to search the locked trunk of the car in the present case is tenuous at best. The officers had no previous information as to the car or the occupants. The supporting facts known to the officers in *Wood, Blood, Robinson, Frizzell* and *Chambers* were not known and could not

reasonably be suspected in the present case. The search of the suitcase can be supported under the authority of the *Croft* case. It was located in an area accessible to the occupants, and evidence of the one open bottle in plain view justified further search to support the open bottle charge. However, it is not illegal to transport open bottles of liquor in Kansas if they are placed in the trunk where they are inaccessible to the occupants. When the officers extended the search to the trunk of the car it became a general exploratory search prohibited by law.

The fallacy of the reasoning, by which probable cause is found to extend the search, lies in the conclusion which is drawn from the assortment of liquors in a suitcase on the back seat of the car. Is this sufficient to show probable cause a felony has been committed and stolen property (narcotics and contraband drugs) are being possessed in the trunk of the car?

The logic of this last conclusion entirely escapes me even though the defendant failed to explain the presence of the liquor to the satisfaction of the officers. I would hold the search unreasonable when it extended to the trunk of the car. The search of the trunk should have been under the authority of a search warrant, if at all. The search of the car was reasonable at its inception when limited to the passenger compartments. When the search was extended to the locked trunk of the vehicle it violated Fourth Amendment rights by reason of its intensity and scope.

Experience shows that an application of the exclusionary rule against evidence seized in violation of constitutional rights is the only viable method which the courts have to restrain overzealous law enforcement officers. I would apply the exclusionary rule in this case as to the evidence obtained by searching the locked car trunk. I would affirm those convictions based upon evidence obtained from a search of the inside of the car, the passenger compartments including the suitcase on the back seat. I would reverse the convictions based on evidence obtained from the locked trunk, the narcotic and drug convictions.

PRAGER, J., joins in the foregoing dissent.