**UNITED STATES of America, Plaintiff,**

v.

**Harley Eugene LODAHL, Defendant.**

**Cr. No. 4212.**

United States District Court
D. Montana,
Missoula Division.

March 7, 1967.

Moody Brickett, U. S. Atty., Donald Douglas, Asst. U. S. Atty., Butte, Mont., for plaintiff.

J. Robert Riley, Missoula, Mont., for defendant.

## OPINION

RUSSELL E. SMITH, District Judge.

The defendant, Harley Eugene Lodahl, was indicted for possessing an unregistered still.[1] He now moves to suppress the still and other evidence seized by the United States on Fourth Amendment grounds.

The evidence was seized by the United States pursuant to a search warrant issued by a United States Commissioner on the basis of an affidavit signed by

---

2. 5 U.S.C. § 757(d); Marion v. United States, D.Md.1963, 214 F.Supp. 320, 321.

3. 28 U.S.C. § 2679(d).

4. Uptagrafft v. United States, 4 Cir. 1963, 315 F.2d 200; Adams v. United States, S.D.Ill.1965, 241 F.Supp. 383, 384.

1. 26 U.S.C. § 5179.

Flathead County Deputy Sheriff, Lester Darling, who had seen the still in the basement of the defendant's house. Defendant contends that Deputy Darling's entry was illegal and that, therefore, the search warrant was based upon tainted evidence, and hence invalid, under the rule in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

The defendant, at the time of Deputy Darling's entry into his house, was incarcerated in the Flathead County Jail upon an unrelated state charge. While so incarcerated the defendant met a fellow inmate, Roger Moisan, who lived at the State Veterans Home located a short distance from the defendant's house. Moisan told the defendant that he feared the superintendent of the veterans home would evict him because of the facts leading to his incarceration. The defendant gave Moisan a written permission to live in his home as follows:

"Roger Moisan has my full permission to live in my cabin on Hwy. 40 west of Columbia Falls.

(Signed) Harley Lodahl."

Upon his release Moisan presented the note to the jailer and received from him the keys to Lodahl's house.

In the meantime a neighbor had called Deputy Darling and told him that she thought there was a gas leak in the defendant's house.

The day before Moisan's release Deputy Darling had advised him that he would give him a ride to the veterans home. In the vicinity of the defendant's house, and while enroute to the veterans home, Moisan told Darling that the defendant had asked him to check the heat, and the deputy told Moisan of the reported gas leak. By car radio Darling called the Chief of Police of Columbia Falls, who joined Moisan and Darling, and all three entered the house. It is not clear from the record why the police chief was called. No gas leak was found on the ground floor. Moisan then opened the door to the basement with a key which he had and Deputy Darling went downstairs. Moisan had not been expressly forbidden to allow no others in the house.

It may be assumed, as defendant contends, that Moisan's right to live in the Lodahl house was conditioned upon his being ejected from the veterans home, and that his authority to inspect the premises did not include an authority to take the deputy sheriff along to help, and, also, that the reports of leaking gas did not constitute an independent justification for the entry of the deputy sheriff. If all these assumptions are made, still, what was done by Darling did not constitute a search, and only unreasonable searches are prohibited.[2]

 The courts have not solved search and seizure problems by technical applications of the rules of agency. It is not likely that any person in possession of a house containing contraband articles had ever given a third person—child; wife; friend—actual authority to invite police officers in; and yet, where the person opening the door invites an officer to enter, an observation by that officer of what is in plain sight after the entry is not held to be an unreasonable search.[3] If because of some lack of authority on Moisan's part there was a trespass, that would not convert the observation of what was in plain sight into a search. This is so because the word "search"[4] denotes an intention to find, and absent such an intention there simply is no search. The Constitution forbids searches, not trespasses. The defendant may have been the victim of a very innocent trespass—he was the victim of incredibly bad luck—but he was not the victim of an unreasonable search and seizure.

2. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

3. Davis v. United States, 9 Cir. 1964, 327 F.2d 301, where eight year old Pamela invited the officers in and pointed out the bathroom to one of them. Teasley v. United States, 9 Cir. 1961, 292 F.2d 460, where friend Skinner led the officers in.

4. "To look into or over carefully or thoroughly in an effort to find or discover." Webster's Third New International Dictionary.