UNITED STATES of America,
Plaintiff-Appellee,

v.

Clarence Allen BLACKBURN, Defendant-Appellant.

No. 17600.

United States Court of Appeals
Sixth Circuit.

Feb. 10, 1968.

94

Boyce F. Martin, Jr., Louisville, Ky., for appellant.

L. Ray Patterson, Asst. U. S. Atty., Nashville, Tenn., for appellee, Gilbert S. Merritt, Jr., U. S. Atty., Nashville, Tenn., on the brief.

Before WEICK, Chief Judge, COMBS, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This is a direct appeal by Clarence Allen Blackburn from a conviction on two counts of an indictment in the United States District Court for the Middle District of Tennessee. Count one charged that Clarence Blackburn, Richard Matthew Sorgmann, Barbara Jo Blackburn and Norma Jean Hough violated the Travel Act (Section 1952, Title 18, U.S.C.) by travelling by motor vehicle from St. Louis, Missouri, to Nashville, Tennessee, with the intention of carrying on prostitution in violation of the laws of Tennessee. Count two charged that Blackburn and Sorgmann transported two females, interstate from Alabama to Tennessee for the purpose of prostitution in violation of Section 2421, Title 18, U.S.C. There was a third count which was dismissed at the trial because of insufficient evidence. Barbara Jo Blackburn and Norma Jean Hough were dismissed from count one without trial. Blackburn and Sorgmann were tried jointly before a jury and were found guilty on counts one and two. Blackburn was sentenced to five years' imprisonment on each count, the sentences to run concurrently. Sorgmann's appeal was dismissed on his motion.

Without going into the sordid details, suffice it to say that it is charged that Blackburn and his wife, Barbara, Sorgmann and Norma Jean Hough travelled by automobile from St. Louis to Nashville for the purpose of having the women engage in prostitution. The evidence strongly supports the charge.

While out riding, looking for work, Blackburn and Sorgmann encountered Robin Ann Wilson and Kathleen Thompson near Pulaski, Tennessee. The girls were aged fourteen and fifteen, respectively, and were hitchhiking. They indicated they wanted a ride and the men picked them up and took them to Huntsville, Alabama, where they bought clothes for the girls. From Huntsville, they took the girls to Nashville where the four adults were registered in the Sam Davis Hotel. Sorgmann and Hough kept Kathleen in their room and Blackburn

and his wife kept Robin Ann with them. The girls were held against their will and were taught the ways of prostitution.

On the afternoon or evening of the second day that the girls were with the Blackburn party, Kathleen feigned illness and was taken to a hospital by Sorgmann. She told her story to a nurse who called the police. The police took Sorgmann and Kathleen to the police station and subsequently Blackburn appeared at the police station voluntarily. Apparently Barbara Jo and Hough were already there and all four of the adults were placed under arrest.

After the defendants had been interrogated and placed under arrest, Major Casey of the Metropolitan Police Department sent Sergeant Searcy and Officer Brown to the Sam Davis Hotel to get and return to the police station all of the belongings of the parties. Among these belongings were a pistol and notebook which were taken from the room of Blackburn. Major Casey gave the pistol and notebook to John E. Rogers, a special agent of the Federal Bureau of Investigation. The other items were given to other officers who itemized them and turned them over to the booking room.

■ The pistol and notebook were introduced into evidence and this is the principal assignment of error on this appeal. It is claimed that this constituted an illegal search without a warrant.

The police employed their usual procedure when a person who was staying in a hotel or motel room was arrested. In sending for the belongings of the parties there was no intention of making a search for evidence or instruments of the crime. The conduct of the police department in sending for the personal effects of the parties, itemizing them and storing them for safekeeping was entirely reasonable and logical. We find that the action of the police officers does not constitute a search.

"A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action. The term implies exploratory investigation or quest." Haerr v. United States, 240 F.2d 533, 535 (C.A.5).

■ It is claimed that "The introduction of these two items and the witnesses that testified with reference thereto was the only evidence introduced to show a violation of Section 1952 of Title 18." This is not supported by the evidence.

The pistol has no relation to count one of the indictment which charges a violation of Section 1952. The only reference to the pistol concerns count two of the indictment which charges a violation of Section 2421, Title 18, U.S.C.

There is substantial extraneous evidence that the appellant did have a pistol. Robin Ann Wilson testified that on the day that she and Kathleen were picked up by the appellant and Sorgmann, the appellant had Sorgmann and Kathleen get out of the car and that the appellant attempted to force her to have intercourse with him at the point of a gun.

Kathleen testified that Clarence (appellant) handed Sorgmann a gun under the table. Sorgmann asked on cross-examination: "Are you certain I didn't give it to Clarence?" She answered: "The gun was under the table. This is something I don't know. I seen the gun move is all I can say."

The following excerpt from the cross-examination of Miss Wilson by the appellant with reference to a gun would indicate that it was assumed that there was a gun:

"Q You were talking about being forced with this gun, all this next day while I was gone from the room did you see this gun?

A Yes.

Q All that day?

A Yes.

Q Where was it at?

A I didn't see it but it was in the drawer.

Q  You didn't see it in the drawer but you knew it was there?

A  Yes.

Q  In other words, you could have taken it at any time?

A  Yes."

Counsel for the appellant argues that through the notebook the prosecution learned of witnesses and gained information which would not have otherwise been known to the investigating officers. The appellant, who conducted his own defense, asked Federal Bureau of Investigation special agent Rogers if he obtained the name of any witnesses from the notebook. Rogers answered: "Yeah, possibly one." The appellant did not develop this further and we do not know what witness' name was obtained from this source. The only pertinent evidence that could have been obtained from the notebook was that the owner of the book had been engaged in prostitution prior to the time that the appellant came to Nashville. This was through the testimony of Rogers interpreting the contents of the notebook.

However, other testimony in the record that the appellant and his wife Barbara Jo were engaged in prostitution at the Newstead Hotel, in St. Louis, was so overwhelming that the evidence from the notebook would be merely cumulative.

There is direct evidence through the testimony of Miss Carol E. DeChantrellia that the appellant and his wife Barbara Jo were engaged in prostitution at the Newstead Hotel. Miss DeChantrellia was the manager of the hotel during the time that the appellant and his wife were registered there in September just prior to their going to Nashville. If Miss DeChantrellia did not actually cooperate in the prostitution dates that were carried on in the hotel, she certainly knew what was going on. She testified that the appellant talked to her about prostitution on the afternoon of the day after they registered at the hotel. Both the appellant and Barbara Jo talked to her about prostitution on other occasions. On cross-examination the appellant asked Miss DeChantrellia: "In other words, most of the tricks[1] or all the tricks I turned was with cab drivers, is that right?" She answered: "Awful lot certainly, yes. You called quite a lot." Her testimony stands uncontradicted.

Agent Rogers testified that the appellant told him that he and his wife obtained rooms at the Newstead Hotel in the early part of September. The prosecution, therefore, was not dependent on the notebook for the name of the important witness DeChantrellia.

A violation of Section 1952 by the appellant is established by the evidence without any reference to the notebook. The essence of this section, so far as the appellant is concerned, is that he travelled interstate from St. Louis, Missouri, to Nashville, Tennessee, with the intent to "promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on," of prostitution and thereafter performed or attempted to perform acts of prostitution which are in violation of the laws of Tennessee. There is ample evidence to support the claim that the appellant travelled from Missouri to Tennessee with the intent to carry on prostitution through his wife Barbara Jo.

That the appellant and his wife carried out this intent and did perform or attempted to perform acts of prostitution in Nashville, Tennessee, is evidenced by the testimony of Robin Ann Wilson. In answer to a question she said: "Well nothing at first but after that evening Barbara went out and then she come back. She gave Clarence some money and then he told her to teach me the ways of prostitution." And in answer to a question whether Barbara left the room while she was there she said: "Well, she left and then she came back and said that the man that she was with wanted a woman with a bigger bustline and then Jean (Hough) went down and she came back and said the

1. In the parlance of the "profession", "tricks" means prostitution dates.

man said she was too fat." From this testimony a logical inference can be drawn that the appellant and Barbara Jo were performing or attempting to perform acts of prostitution in violation of the laws of Tennessee. (T.C.A., Section 39–3502.)

The introduction of the pistol and notebook was merely cumulative testimony as to facts which were supported by substantial, uncontroverted, extraneous evidence. We conclude that the introduction of these items, without their having been secured by a search warrant, was not prejudicial to the appellant and did not affect his substantial rights (Rule 52(a), F.R.Crim.P.), and, in our opinion, was harmless beyond a reasonable doubt. (Chapman v. State of California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705)

The trial judge committed no abuse of discretion in denying the appellant's motion for a severance under Rule 8 of the Federal Rules of Criminal Procedure.

There is ample evidence to establish the element of intent on the part of the appellant Blackburn to violate Section 2421, Title 18, U.S.C.

Judgment affirmed.