UNITED STATES of America,
Plaintiff-Appellee,

v.

Ray Charles HUMPHREY, a/k/a Ray
Humphrey, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Hiawatha MICKENS, Defendant-
Appellant.

Nos. 177–68, 178–68.

United States Court of Appeals
Tenth Circuit.

April 16, 1969.

John E. Green, Oklahoma City, Okl. (B. Andrew Potter, U. S. Atty., with him on the brief), for plaintiff-appellee.

Gary D. Baer, Oklahoma City, Okl., for defendants-appellants.

Before MURRAH, Chief Judge, SETH, Circuit Judge, and CHRISTENSEN, District Judge.

MURRAH, Chief Judge.

In this case Appellants jointly appeal from a sentence on a jury verdict convicting them of violating Section 902(e) of Title 15, United States Code, by transporting firearms in interstate commerce having previously been convicted of a felony. The sole issue raised on appeal is whether the search which discovered the firearms in Appellant Humphrey's automobile was legal.

On March 6, 1968, at about 10:30 p. m. Officers Acox and Schimmels of the Oklahoma City Police Department observed an automobile, with out-of-state license tags, violate a city traffic ordinance. The officers pursued, turning on the patrol car's flashing red light. Immediately the officers both observed Appellant Mickens, a passenger in the right front seat, motion with his hands as though putting something under the seat as the automobile came to a stop. Officer Acox approached the driver's side and met the driver, Emery, who had gotten out of the car. Emery identified himself, produced his drivers license and was immediately searched. The search produced several money orders found in his shirt pocket in a name other than Emery.

While this transpired, Officer Schimmels approached the other side of the car, asked passengers Mickens and Humphrey to get out and he "frisked" them.

No weapons or contraband of any sort were found on either Mickens or Humphrey. Mickens and Humphrey were then asked to step to the rear of their car where Officer Acox was standing with Emery. Officer Schimmels then looked under the right front seat with a flashlight and found a revolver. Further search also disclosed another revolver under the left front seat.

The driver, Emery, had been arrested for the traffic violation prior to the search.[1] After the discovery of the weapons Mickens and Humphrey were arrested for possession of firearms in violation of a city ordinance. All three were then placed in the rear of the patrol car and, according to the officers, given the Miranda warnings. No statements were made in the patrol car. Before leaving the scene, Emery requested permission to get his jacket out of the trunk and opened the trunk in the presence of Officer Acox. When Emery removed his jacket, the officer saw a shotgun and confiscated it.

At the police station, again according to the officers, the prisoners were each reminded of their Miranda rights and then willingly interrogated. On interrogation, the prior felony convictions of Mickens and Humphrey came out and further statements were made as to who owned which weapon. Federal officers were called in and admittedly advised Mickens and Humphrey of their Miranda rights, whereupon both made further statements relating to the ownership of the weapons.

After the trial began, defense counsel moved to suppress all evidence as the fruits of an illegal search and seizure and, in the exercise of his discretion, the trial judge considered the motion and all subsequent objections to the introduction of the seized evidence and ruled against the defendants. Rule 41(e), Fed. R.Cr.P. 18 U.S.C.

 The argument is initially advanced that we should exclude this evi-

---

1. The policy of the Oklahoma City Police Department is to take out-of-state traffic violators to the Police Headquarters where they are permitted to post bond.

dence as a sanction against the questionable policy of the Oklahoma City Police Department to routinely search traffic violators. This policy is exemplified in the following testimony:

"Q. Officer Schimmels, is it common and customary practice of officers of the Oklahoma City Police Department, after stopping a motorist on violation of a routine traffic offense, to ask them to get out of the car and frisk them and shake them down and search their car?

A. As far as I know, it is."

On redirect the Officer clarified that this procedure was

"somewhat different in the daytime, and it also depends upon the location that they are stopped at, and the person who is driving, whether or not it's a woman or a suspicious looking character. If it looks like it's a good citizen in the daytime, I don't know whether the other officers shake them down or not. We usually shake down almost everybody we stop if it's a man."

The essence of this argument is that the exclusionary rule adopted in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), as vitalized in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), be applied to the evidence in this case as a matter of federal policy. We think the fallacy of this thesis was recently well noted by Chief Justice Warren in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), where he stated that the exclusionary rule "cannot properly be invoked to exclude the products of legitimate police investigative techniques on the ground that much conduct which is closely similar involves unwarranted intrusions upon constitutional protections," p. 13, 88 S.Ct. p. 1875, and that "a rigid and unthinking application of the exclusionary rule, in futile protest against practices which it can never be used effectively to control, may exact a high toll in human injury and frustration of efforts to prevent crime" p. 14, 88 S.Ct. p. 1876. In this sensitive area, involving constitutionally protected interests of the individual against "unwarranted intrusions" by his government, the cautious, inductive approach is in order. Our decision here reaches only the facts before us and gives no sanction to other "closely similar" conduct. We now turn to an in depth consideration of our facts and the applicable principles.

█ By its own terms the Fourth Amendment protects people "against unreasonable searches and seizures." Thus not all searches run afoul of the constitutional sanction but only those unreasonable in origin or scope. While the evolution of this constitutional standard of reasonableness has varied with our sense of justice, it is certain today that warrantless searches on probable cause are reasonable only when it is unfeasible to obtain a search warrant on proper affidavit (Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925) and Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). Unless, of course, it is reasonably "incident" to a legal arrest (Weeks v. United States, supra, Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) and Welch v. United States, 361 F.2d 214 (10th Cir. 1966) cert. den. 385 U.S. 876, 87 S.Ct. 153, 17 L.Ed.2d 103), or can be said to be a mere "stop and frisk" as in Terry v. Ohio, supra and Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Notably, these exceptions are not based on anything inherent in the exception itself but result from the inductive case by case application of the constitutional standard of reasonableness. Thus these exceptions are traditionally justified by the need to protect the arresting officers, prevent escape, collect instrumentalities or fruits of the crime (and now evidence, Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)), and prevent delay which might otherwise permit the criminal to escape or commit his crime. See Harris v. United States, supra, Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70

L.Ed. 145, 51 A.L.R. 409 (1925) and Brinegar v. United States, supra. From this rationale it is clear that the scope of a search contemporaneous with a legal arrest must have a reasonable relationship to the protection of the officer or the crime for which the accused was arrested. As stated in Terry v. Ohio, supra 392 U.S. at p. 19, 88 S.Ct. p. 1878, "[T]he scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible", i. e. the detention or arrest. Cf. Sibron v. New York, supra 382 U.S. at p. 67, 88 S.Ct. 1889 and see 81 Harv.L.Rev. 69, 122. If not, the search is unreasonable and violates Fourth Amendment protected interests. See annotation, Lawfulness of Search of Motor Vehicle Following Arrest for Traffic Violation, 10 A.L.R.3rd 314. We are in complete agreement with the prevailing federal and state authority which condemns the search of persons and automobiles following routine traffic violations. Such searches can only be justified in exceptional, on the spot circumstances which rise to the dignity of probable cause. See George, Constitutional Limitations on Evidence in Criminal Cases (1969 Ed.) at p. 71.

■ Reading on our facts, we find an individual being stopped for a routine traffic violation. Both officers agreed that neither Emery nor the defendants were suspected of anything else prior to the traffic offense pursuant to which Emery was searched. But our review of the record reveals no facts sufficient to show that the officers sought fruits of the crime—if there be fruits of the crime of running a stop sign—or from which we can reasonably infer that Emery was armed and dangerous. We do not think the testimony that "[A]ny time we [the officers] stop a car we are in danger" is adequate for the jury, trial court, or ourselves to reasonably infer that the officers were in danger. Cf. Terry v. Ohio, supra 392 U.S. at p. 27, 88 S.Ct. 1868. Certainly the officers must act on the spot, without time for objective appraisal, relying on their experience as law enforcement agents. Likewise, in order to fulfill its duty to safeguard constitutional guarantees in light of developing constitutional principles, this court must have record facts showing that the warrantless search was reasonably incident to the warrantless arrest or otherwise based on probable cause. Cf. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). We fail to find such justification for the search or "frisk" of Emery's person.

■ Emery is not a defendant, however, and Appellants have no standing to complain of the questioned search of Emery's person. "The established principle is that the suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969). Galbraith v. United States, 387 F.2d 617 (10th Cir. 1968), Elbel v. United States, 364 F.2d 127 (10th Cir. 1966) cert. den. 385 U.S. 1014, 87 S.Ct. 726, 17 L.Ed.2d 550, and cf. Anderson v. United States, 399 F.2d 753 (10th Cir. 1968). Cf. also Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968) and Green v. United States, 386 F.2d 953 (10th Cir. 1967). Consequently, Appellants cannot complain of the knowledge gained by Officer Acox from the money orders found on Emery's person.

■ As neither Mickens nor Humphrey were, or could have been, under arrest, further search of the automobile as to them can be justified only on the grounds of feasibility and probable cause. The probable cause and feasibility test of Carroll v. United States, supra, was recently paraphrased in Terry at pp. 21–22, 88 S.Ct. at p. 1880, where Chief Justice Warren stated it as follows: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was ap-

propriate?" The test is pragmatic and the solution found "by balancing the need to search against the invasion which the search entails." Camara v. Municipal Court, etc., 387 U.S. 523, 536–537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967).

Applying these principles in light of the Fourth Amendment test of reasonableness we think the search of the car was reasonable and, therefore, valid. The officers were faced with suspicious money orders and the previously' noted movements by Appellant Mickens. The balancing process is, as always, close and the allegedly "furtive" movements alone establish nothing. But we think the suspicious money orders in light of these movements gave the officers probable cause to respond to the observed motions and look under the seat of the car. The first revolver being found, further search under the seat was proper. As objective evidence of the reasonableness of the scope of the search, it is significant that no general search of the vehicle was made, and, indeed, Emery himself later disclosed the existence of the shotgun in the trunk. Cf. Welch v. United States, supra, State v. Randolf, 222 Or. 389, 353 P.2d 238 (1960) and Anderson v. State, 444 P.2d 239 (Okla. 1968) cert. den. 393 U.S. 1017, 89 S.Ct. 618, 21 L.Ed.2d 560.

The judgment is affirmed.