**Bobby Joe FAUBION, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 329-69.**

United States Court of Appeals, Tenth Circuit.

April 17, 1970.

Hill, Circuit Judge, dissented.

Tom R. Mason, Muskogee, Okl., for appellant.

Robert D. McDonald, Asst. U. S. Atty., Muskogee, Okl. (Richard A. Pyle, U. S. Atty., Muskogee, Okl., with him on the brief) for appellee.

Before MURRAH, Chief Judge, and HILL and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

On December 17, 1968, appellant Faubion was indicted by a grand jury on a charge of violating 15 U.S.C. § 902(g),[1] interstate transportation of stolen firearms. Thereafter he was tried and found guilty by a jury. It is from that conviction which he now appeals.

Faubion presents the following issues for review by this court:

(1) Whether the lower court erred in overruling Faubion's motion to suppress the evidence of the weapons seized from his luggage and in permitting the admission of the weapons into evidence at trial over his objections.

(2) Whether the evidence was sufficient to establish a prima facie case of knowledge or cause for knowing the weapons were stolen.

(3) Whether it was error to instruct the jury that an inference of knowledge arises from the possession of recently stolen property.

(4) Whether it was error to display the weapons in the presence of the jury before they were admitted into evidence.

Faubion was arrested in Oklahoma on the basis of a warrant held by the Arkansas authorities which charged him and his wife each with a misdemeanor and charged Faubion with a felony. The charges of the warrant were founded upon offenses not related to the present offense. The apprehension by Oklahoma officers was made without the issuance of an Oklahoma warrant. The Arkansas authorities were notified and arrived in Oklahoma to return the prisoners. Both Faubion and his wife waived extradition and voluntarily returned to Arkansas with the sheriff. Before leaving Oklahoma Faubion's wife, accompanied by local police, returned to the motel in which Faubion and she were staying when apprehended. She paid the bill, gathered their portable luggage and placed it in the trunk of the Arkansas officers' car.

During the trip back to Arkansas, the wife related the checking out operation to Faubion. The officers testified that Faubion started to make a statement to them which was not prompted. They

---

1. 15 U.S.C. § 902(g) was repealed and is now covered in 18 U.S.C. § 922(i). The repeal occurred before charges were brought in this case. However, by virtue of 1 U.S.C. § 109, the appellant's liability under the repealed section was not affected.

contend they stopped him and gave him a complete warning of his rights as prescribed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thereafter Faubion advised them there were two handguns in his luggage that belonged to a friend. He did not identify the friend. Faubion contends he was not given a warning before the statement was made.

When the group arrived in Arkansas, the Faubions were booked and their luggage was opened and the two guns were found. An examination of the guns identified them as property stolen from the home of an Arkansas resident that had been burglarized a short time before the date of the foregoing events. Thereafter Faubion was indicted for the federal offense of interstate transportation of stolen firearms.

The government's evidence placed Faubion, his wife and another man at a motel resort in the Little Rock area at the time the home was burglarized and the guns stolen. The employees and operators of the motel resort identified Faubion and his wife. They also identified a pair of binoculars stolen from the burglarized home which had been found in the room occupied by the Faubions at the resort after they checked out. An attempt had been made to scratch the name from the binoculars. A close examination revealed the name of the owner who was the burglary victim. The motel operator also testified that while making beds she saw a rifle between the mattress of the bed in Faubion's room. An employee testified Faubion showed him one of the handguns that looked similar to one of the stolen guns introduced in evidence. A vehicle similar to the one used by the Faubions while residents of the motel was located. A search of this vehicle, which is not here objected to, disclosed a rifle stolen in the Little Rock burglary and similar to the one seen in the bedstead, a pillow slip with the mark of the linen supply company that accommodated the resort, and a white shirt with the laundry mark "Faubion" imprinted thereon.

A taxi driver testified that he had driven Faubion around Fort Smith, Arkansas, the night preceding the apprehension. Faubion located the automobile described above at the jail compound in Fort Smith during this excursion and thereafter engaged the taxi driver to drive him to Tulsa, Oklahoma. On the way to Tulsa, Faubion's wife became ill and they stopped and registered at the motel where the two were later apprehended. Faubion offered a handgun similar to one in evidence as payment for the taxi ride. The driver did not accept it.

Faubion denied the episodes at the motel resort, the interest in the vehicle at the police compound, and any knowledge of the theft of the guns found in his luggage.

Evidence was introduced on his behalf to the effect that two former associates each with a criminal record had acquired the guns in question during a card game in Dog Patch, Oklahoma, the night before they met Faubion at the motel in Muskogee and that they left the guns with Faubion to examine with the idea of purchase in mind. Before Faubion could return them or pay for them as promised, he was apprehended as above described.

The most serious issue with which we are concerned is the seizure of the handguns from the luggage. The government contends this seizure was part of the lawful warrantless arrest.

The arrest may have been a legal warrantless arrest under Oklahoma law. Reed v. United States, 364 F.2d 630 (9th Cir. 1966), cert. denied, 386 U.S. 918, 87 S.Ct. 878, 17 L.Ed.2d 789 (1967), construing 22 Okla.Stat.Ann. § 196.

In order to search without a warrant incident to arrest, the search must be contemporaneous both in time and place with the arrest. Welch v. United States, 411 F.2d 66 (10th Cir. 1969). The search in this case was not incident to arrest. Wood v. Crouse, 417 F.2d 394 (10th Cir. 1969).

"Except as incident to a lawful arrest or on invitation or consent, a search, without a warrant, of portable personal effects in the immediate possession of their owner is illegal." 79 C.J.S. Searches and Seizures § 66c (1952).

■ The government contends the voluntary disclosure made by Faubion on the return trip to Fort Smith was an invitation or consent. The cases sustaining a search on invitation or consent are numerous, however, traditional language conveying the voluntary accession to the invasion is required. The statement by Faubion that there were two handguns in his luggage did not convey the voluntary assent to an invasion of the luggage. "[I]t is certain today that warrantless searches on probable cause are reasonable only when it is unfeasible to obtain a search warrant on proper affidavit * * *." United States v. Humphrey, 409 F.2d 1055, 1057 (10th Cir. 1969). The most that can be said to be conveyed by Faubion's statement is that it would have been probable cause to sustain an affidavit for a search warrant.

"The fact that the police have custody of a prisoner's property for the purpose of protecting it while he is incarcerated does not alone constitute a basis for an exception to the requirement of a search warrant. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 * * *." Brett v. United States, 412 F.2d 401, 406 (5th Cir. 1969). The language of Brett, supra, coincides with this court's position in Humphrey, supra, which emphasizes the requirement of a warrant.

■ It is contended that a search was not involved. To us this seems without merit because the luggage had to be invaded to seize the handguns. "The focus in Fourth Amendment cases today is on privacy rather than on property rights. E.g. Katz v. United States, 389

U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 * * *." Brett, supra, 412 F.2d at 406.

The motion to suppress should have been sustained and the evidence refused. Because of the foregoing conclusion, the other contentions of appellant need not be considered.

Reversed.

HILL, Circuit Judge (dissenting).

Because the majority has presumed a "search" I must respectfully dissent. On appeal the United States argued that the guns were not the products of a search, as that term is used in the Fourth Amendment. The majority has casually dismissed this proposition by concluding that the act of opening and itemizing the contents of Faubion's luggage was ipso facto a search. Until now the police have been permitted to inventory all the personal belongings of a prisoner for the purpose of safekeeping during the prison term. The reason this is permitted is that the officers are not attempting to locate and confiscate evidence but rather to guarantee the safety of one's belongings. Under the majority's presumption, this latitude seems to be abrogated. I do not believe such a result to be compelled by the Fourth Amendment.

The Fifth and Sixth Circuits have settled on what seems to be a well considered definition of "search": "A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action. The term implies exploratory investigation or quest." Haerr v. United States, 240 F.2d 533, 535 (5th Cir. 1957) and United States v. Blackburn, 389 F.2d 93, 95 (6th Cir. 1968).[1] Implicit in the definition is an element of intent. When that crucial intent is lacking, as it is in a police station inventory of personal effects, there cannot be an illegal search.

1. Other cases similarly defining "search" are: United States v. Haden, 397 F.2d 460 (7th Cir. 1968) ; Di Marco v. Greene, 385 F.2d 556 (6th Cir. 1967) ; United States v. Lodahl, 264 F.Supp. 927 (D. Mont.1967) ; United States v. Cook, 213

F.Supp. 568 (E.D.Tenn.1962) ; United States v. Strickland, 62 F.Supp. 468 (W.D.S.C.1945) ; in addition see 79 C.J.S. Searches and Seizures § 1; Black's Law Dictionary (Fourth ed.) p. 1518.

The Ft. Smith police, employing their usual procedure, opened Faubion's suitcase and itemized the contents without any intent to seize contraband or evidence of guilt to be used in prosecuting the crime charged. The fact that Faubion had earlier mentioned the presence of two pistols in the suitcase does not taint the police procedure for three reasons. First, there was no indication that the weapons were stolen and could form the basis of an independent criminal charge. Second, even had Faubion not made the statements, the same procedure would have been followed, and the guns found. And third, there is an element of self-protection and jail security involved in locating and isolating weapons which are, in all probability, part of an accused's possessions.

The decision of Brett v. United States, 412 F.2d 401 (5th Cir. 1969) is used by the majority as authority for the proposition that this was an illegal search. That case is factually different from this one but, at the same time, recognizes the distinction I attempt to make. In Brett, a search was made of appellant's effects when he was booked into jail. However, several days later, at the insistence of a narcotics agent, another search was conducted which uncovered evidence of heroin. The latter search was challenged and deemed illegal. The court said: "The search was unrelated to the duties of the police as guardians of the prisoner's property, to inventory or to protect property in their hands for safekeeping." [at 405–406] That language and all that it implies should control this case.

To the same effect is United States v. Blackburn, 389 F.2d 93 (6th Cir. 1968). The Sixth Circuit held that no search had occurred when, after arresting defendants and taking them to police headquarters, police officers were sent back to the hotel room to collect the personal effects of defendants. In the course of that act, a pistol and notebook were found and later introduced into evidence. The court found no search. "The police employed their usual procedure when a person who was staying in a hotel or motel room was arrested. In sending for the belongings of the parties there was no intention of making a search for evidence or instruments of the crime. The conduct of the police department in sending for the personal effects of the parties, itemizing them and storing them for safekeeping was entirely reasonable and logical. We find that the action of the police officers does not constitute a search." [at 95] This recognizes the refinement I attempt to point out between a search which intends to uncover concealed evidence to be used in a criminal prosecution and the routinely conducted inventory at a police station prior to incarceration.

Even if the majority is right in saying a search was conducted, the circumstances under which it was done do not indicate unreasonableness. In Brett it was recognized that warrantless searches may spring from exceptional circumstances. Certainly when a jail prisoner-to-be states that weapons are concealed among his effects, an exception ought to exist for reasons of personal preservation and jail security.

I would affirm the District Court on this point.