**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Raymond TAGGART, Defendant.**

**Crim. A. No. 2142.**

United States District Court,
D. Delaware.

Nov. 26, 1971.

F. L. Peter Stone, U. S. Atty., and Richard D. Levin, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Jay A. Connor, Wilmington, Del., for defendant.

### OPINION AND ORDER

STEEL, District Judge.

The defendant Taggart stands charged with possession of one gram of cocaine hydrochloride in violation of 21 U.S.C. § 884(a). The cocaine was found in the possession of the defendant when he was searched at the police station two hours after his arrest and was thereupon seized for use as evidence in the impending trial. No warrant had been issued either for the search or the arrest.

Taggart has moved to suppress the use of the cocaine as evidence contending that his arrest was invalid or if it was valid, the search was not an incident to the arrest and was in derogation of his rights under the Fourth Amendment.

#### The Arrest

The rule is a general one that no search may be made of a person or his property without a search warrant. There are exceptions to the rule, but they have been jealously and carefully

drawn. One such exception is a search which is incident to a valid arrest. Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1957). If a search is to be justified as one incident to an arrest, the arrest itself must be a valid one. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

The circumstances under which Taggart was arrested are the subject of uncontroverted testimony. On May 28, 1971, Agent King of the Bureau of Narcotics and Dangerous Drugs, during a conversation with one Gardner Lee Crippen arranged to purchase narcotics from him on the following day. During that conversation Crippen informed King of his intention to be accompanied by "some look-outs to assure no one interfered with the transaction". At the appointed meeting place on the following day, surveilling agents being mindful of Crippen's intention to bring along look-outs, observed Crippen alone in one car being closely followed by a second, the occupants of which were later identified as one Bond and defendant Taggart. Agent King approached Crippen and inquired whether he had the "stuff". Crippen answered affirmatively, directed King to remain at his present position and then walked to the Taggart and Bond auto parked 60 to 70 feet away and returned with Bond. Crippen, Bond and Agent King entered Crippen's car where King was handed drug samples which pursuant to the arrangement he took to a nearby restroom where he verified by a chemical test that the samples were cocaine and heroin as Bond and Crippen had claimed.

Once the narcotic verification was completed King signalled the other agents from the Bureau of Narcotics, and also the Wilmington Police and the Delaware State Police to arrest Crippen, Bond and Taggart. This direction was given as to Crippen and Bond because they were in possession of approximately two ounces of heroin and two ounces of cocaine. King directed the arrest of Taggart because he was with Bond, had been seen talking to Bond and Crippen, and the previous day Crippen had stated that he would bring along some look-outs to make sure no one interfered with the transaction.

The Bureau of Narcotics agents arrested Crippen and Bond for possession with intent to sell narcotics and conspiring to do so. They arrested Taggart for conspiracy to violate the Federal Narcotics Laws. When, in connection with the arrest, Taggart and Bond were frisked, firearms were discovered on their persons and thereupon the Delaware State Police arrested them for a firearms violation.

In Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949) the court defined "probable cause" as follows:

"Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] insufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."

The general test of probable cause is designed to strike a balance between an individual's rights against unreasonable interferences with privacy and from unfounded charges of a crime on the one hand and a countervailing reasonable necessity of law enforcement for the protection of the community at large on the other. Terry v. Ohio, 392 U.S. 1, 21–23, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967), Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L. Ed. 1879 (1949). The probabilities with which this test deals must be viewed in light of "the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, *supra*, 338 U.S. at 175, 69 S.Ct. at 1310. Taggart's arrival and apparent intended departure with Bond combined

with Bond's direct involvement and the agent's anticipation of look-outs—a role Taggart appeared to fulfill—is a sufficiently reasonable basis for the agent's belief that Taggart was implicated in narcotics sale. Compare Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L. Ed. 210 (1948).

The arrest of Taggart was not illegal. There existed probable cause for making it. Defendant's contention that the search and seizure were illegal because of the claimed illegality of the arrest is rejected.

### The Search and Seizure

The defendant next contends that even if the arrest was valid, the search was illegal because it was neither incident to the arrest nor was it authorized by a warrant. This contention necessitates an examination of additional facts.

Approximately two hours after his arrest Taggart was "processed" in the Delaware Police Station. This consisted of fingerprinting, photographing and inventorying his possessions. Agent Dreisbach took Taggart's wallet from his possession. Its contents were then examined. The one gram of cocaine to which the present motion is directed was discovered within the folds of a crumpled dollar bill taken from the wallet. Taggart's consent was not sought and presumably was not obtained.

It may be assumed that the search in the police station was too remote from the time and place of the arrest to justify it as one which was incident to the arrest. "A search may be incident to an arrest 'only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest. * * *'" Coolidge v. New Hampshire, 403 U.S. 443, 456, 91 S.Ct. 2022, 2033, 29 L.Ed.2d 564 (1971).

Still the question remains whether the events which occurred at the Police Station amounted to an unreasonable search

and seizure. The Fourth Amendment provides protection only against "unreasonable searches and seizures." Whether a search and seizure is unreasonable depends upon the facts and circumstances of each case. Cooper v. California, 386 U.S. 58, 59, 87 S.Ct. 788, 17 L. Ed.2d 730 (1967).

The purpose of the agents in examining the contents of Taggart's wallet was not to find narcotics. The agents had no reason to know that the wallet would contain cocaine or any other matter that might be used as evidence. Their purpose was to enable an inventory to be made of Taggart's personal property. This was to assure that whatever was taken from Taggart would be returned to him if and when he was released, or that property turned over to the marshal would be identified, if this should be done, as it was in the instant case. This inventory procedure was routine.

■ It may well be questioned whether the inventorying of Taggart's possessions as an incident to their safekeeping while he was in jail constituted a "search" in the constitutional sense. Compare United States v. Blackburn, 389 F.2d 93, 95 (6th Cir. 1968). But apart from this question the government has borne its burden of establishing that the station house procedure was reasonable, bearing in mind the purposes which it sought to further. In United States v. Lipscomb, 435 F.2d 795 (5th Cir. 1970) the Court said at p. 800:

"We hold that in the circumstances of this case the actions of the Montgomery police in inventorying Lipscomb's personal belongings without a warrant did not constitute an unreasonable search. It can not be denied that to prevent escape, self-injury, or harm to others, the police have a legitimate interest in separating the accused from the property found in his possession. An inventory is then necessary both to preserve the property of the accused while he is in jail and to forestall the possibility that the accused

may later claim that some item has not been returned to him."

Accord: United States v. Robbins, 424 F.2d 57 (6th Cir. 1970); see also, Cotton v. United States, 371 F.2d 385, 392–393 (9th Cir. 1967).

The motion of defendant to suppress the use of the cocaine as evidence will be denied.

So ordered.